EXHIBIT D

# PARTICIPATION AGREEMENT
# BETWEEN
# THE PUBLIC ENTITY POOL FOR LIABILITY
# AND
# THE STATE OF SOUTH DAKOTA

This Agreement is made and entered into effective the first day of July 2022 by and between the Public Entity Pool for Liability (hereinafter referred to as "PEPL") and the State of South Dakota (hereinafter referred to as "State") and is made with reference to the following:

## WITNESSETH:

WHEREAS, SDCL ch. 3-22 establishes PEPL to provide a fund as the sole source for payment of valid tort claims against employees of the State; and

WHEREAS, PEPL has developed a program for funding such tort claims; and

WHEREAS, the State is authorized to obtain liability coverage for its employees from PEPL; and

WHEREAS, the State has duly authorized the execution, delivery and performance of this Agreement,

NOW THEREFORE, in consideration of the mutual covenants contained herein, under which immunity of such employees is waived pursuant to SDCL ch. 3-22, PEPL and the State hereby agree as follows:

## ARTICLE I
## INTRODUCTION

This Agreement sets forth the terms and conditions applicable to the tort liability coverage program offered by PEPL to employees of the State and the conditions under which immunity of such employees is waived in accordance with the provisions of SDCL ch. 3-22 and Article III, Section 27 of the South Dakota Constitution.

7/01/2022

## ARTICLE II
## TERM

This Agreement commences July 1, 2022, and shall automatically continue for successive annual periods until termination or dissolution as set forth in Article X. Notwithstanding this section, if the Legislature fails to appropriate funds or to grant expenditure authority for this purpose, this Agreement shall terminate at the end of the then current coverage period.

## ARTICLE III
## COVERAGE

The scope and limits of coverage shall be as set forth in the Memorandum of Liability Coverage attached hereto and incorporated herein as Appendix A.

## ARTICLE IV
## CONTRIBUTIONS

Contributions by the State to PEPL shall be calculated annually and shall consider:

1. The State's employees' exposure to liability loss;

2. The State's employees' historical loss experience;

3. The cost of providing claim administration, legal defense, loss prevention and related services to the State and its employees;

4. PEPL's general administration and overhead related to the program provided to the State;

5. The cost of any commercial insurance protecting the State's employees and purchased by PEPL;

6. The need for reserve funds and contingency contributions to ensure the solvency of PEPL;

7. Amounts needed to restore shortfalls of previous coverage periods;

8. Investment income earned by PEPL;

9. The limit and scope of coverage provided to the State's employees by PEPL.

The rating formula may be changed by PEPL, effective with the first day of any coverage period. The contribution amount and the rating formula selected by PEPL for

2                                                           7/01/2022

any coverage period shall be disclosed to the State no later than November 1 preceding the effective date of the next coverage period. Contributions shall be remitted to PEPL on or about July 1 each year.

## ARTICLE V
## RETURN OF SURPLUS

PEPL shall, from time to time, evaluate the financial results of each coverage period. If PEPL determines there is a surplus for any coverage period, it may distribute the surplus to the State or transfer it to the Contingency Reserve. The amount, timing and method of distribution or transfer of surplus, if any, shall be at the sole discretion of PEPL. No surplus shall be distributed to the State without an independent actuarial determination that the contingency reserve is adequate and outstanding liabilities are adequately provided for.

## ARTICLE VI
## CONTINGENCY RESERVE

PEPL shall establish a contingency reserve. The contingency reserve shall be used for contingencies, including temporary funding of contribution shortfalls. The contingency reserve shall be credited with interest earnings. An actuary shall periodically review the contingency reserve for adequacy. The contingency reserve may not be counted for triggering a surplus distribution.

## ARTICLE VII
## FUND

Prior to the inception of each coverage period hereafter, PEPL shall, by resolution, establish the amount of the fund for the coverage period. The amount so established shall be used to compute payouts for all structured settlements from occurrences during the coverage period.

## ARTICLE VIII
## PEPL'S OBLIGATIONS

PEPL shall carry out the provisions of SDCL ch. 3-22 and this Agreement and shall provide:

1. Coverage in accordance with the Memorandum of Coverage, Appendix A;

2. Tort liability claim administration services for claims covered by the Memorandum of Coverage, Appendix A;

3

7/01/2022

3.  Legal defense for litigated claims covered by the Memorandum of Coverage, Appendix A;

4.  Tort liability loss prevention services;

5.  Monthly statements of claims reported and losses incurred, paid and reserved by accident year;

6.  Detailed financial statements and budgets for each coverage period;

7.  Independent audits of claim administration services;

8.  Independent actuarial studies of loss and contingency reserves.

## ARTICLE IX
## STATE'S OBLIGATIONS

The State shall:

1.  Remit to PEPL, in the manner and time requested, all contributions;

2.  Comply with SDCL ch. 3-22;

3.  Provide PEPL with prompt written notice of claims or events likely to give rise to claims covered by the Memorandum of Coverage;

4.  Cooperate with PEPL and, upon its request, assist in the settlement and defense of claims and enforcement of any rights of contribution or indemnity that the State, its employees or PEPL may have against any person;

5.  Not, except at its own expense, voluntarily make any payments, assume any obligations or incur any costs with regard to the settlement of any covered loss;

6.  Subrogate PEPL to the extent of any and all rights that the State or its employees may have to the recovery or reimbursement of any payments made by PEPL on behalf of the State's employees. The State shall do nothing to prejudice such rights and shall cooperate with PEPL in the recovery or reimbursement of any sums.

7/01/2022

## ARTICLE X
## TERMINATION OR DISSOLUTION

The State may withdraw from PEPL at the end of any coverage period by giving PEPL at least 180 days written notice of its desire to withdraw.

PEPL may decline renewal of the State's participation by giving the State at least 180 days written notice of its desire not to renew.  Coverage may be terminated under this provision only at the end of a coverage period unless another date is mutually agreed upon.

Upon withdrawal, termination or dissolution for any reason, the State and PEPL shall reach an agreement on the disposition of all funds, reserves, surplus and claims.

THE PUBLIC ENTITY POOL FOR LIABILITY

By: _____
Craig Ambach, Director

THE STATE OF SOUTH DAKOTA

By: _____
Scott W. Bollinger, Commissioner
Bureau of Administration

5

7/01/2022

**Appendix A**

## THE PUBLIC ENTITY POOL FOR LIABILITY
### Memorandum of Liability Coverage
### to the Employees of the State of South Dakota

### <u>Declarations</u>

Coverage Amount:     $1,000,000 per *occurrence*,   subject to limitations set
forth in SDCL ch. 3-22 and this Memorandum.

Coverage Period:     From July 1, 2022 through June 30, 2023.

6                                                                    7/01/2022

## THE PUBLIC ENTITY POOL FOR LIABILITY

### Memorandum of Liability Coverage
### to the Employees of the State of South Dakota

In consideration of the Contribution stated in the Declarations and incorporating the provisions of SDCL ch. 3-22, except as altered by the Participation Agreement, *PEPL* and the *State* agree as follows:

## I. COVERAGE DESCRIPTION

**A.      SOVEREIGN IMMUNITY**

Except to the extent that coverage is specifically provided under this Memorandum, the *State* reserves on behalf of itself and the *employees* all rights of sovereign or governmental immunity.

**B.      DAMAGES COVERAGE**

*PEPL* will pay damages, not excluded hereunder, on behalf of the *employee* that the *employee* becomes legally obligated to pay because of an *occurrence*, not excluded hereunder.

*PEPL* will also provide defense coverage and pay damages which an *employee* or state agency, board, commission, or educational or medical institution becomes legally obligated to pay for *employment practices claims* which are not excluded hereunder.

**C.      DEFENSE COVERAGE**

*PEPL* has the right and duty to defend any claim or suit for damages not excluded hereunder, but:

1.   *PEPL* may, at its discretion, investigate any *occurrence* and settle any claim or suit that may result, and

2.   *PEPL*'s right and duty to defend ends after the Coverage Limit is exhausted by payments made or obligations assumed by *PEPL* for occurrences not excluded hereunder, and

3.   PEPL has the right and duty, if the law allows for recovery of *Defense costs*, to apply to the Court for *Defense costs* PEPL incurred defending the

7                                    7/01/2022

claim or suit.   Nothing in this section prevents PEPL or the State from waiving an award of *Defense costs* as a condition of settlement.

*Defense costs* are payable in addition to the Coverage Limit.

**D.     APPROPRIATION AND EXPENDITURE AUTHORITY LIMITATION**

All liability recognized or created under this agreement is void, unless the *State* Legislature appropriates funds and grants expenditure authority as required to discharge such liability.

**E.     EXCLUSIONS**

This Memorandum does not extend coverage or apply to any liability:

1.   Assumed under contract, except this exclusion shall not apply to rental car contracts entered into by *employees* or to contracts specifically added by endorsement hereto;

2.   Arising out of the ownership, operation, use, maintenance or entrustment of any *aircraft* owned or operated by, rented or loaned by or to any employee, except this exclusion shall not apply to the extent *PEPL* purchases insurance for such purposes;

3.   Due to declared or undeclared war, riot, a concerted act of civil disobedience and similar *occurrences* or acts or conditions incident thereto. However this exclusion does not apply to liability arising from actions taken to protect persons or property;

4.   Under workers' compensation, disability benefits, unemployment compensation or similar laws;

5.   For *bodily injury* to an *employee* arising out of and in the course of employment by the *State*;

6.   For injury to the spouse, child, parent, brother or sister of the *employee* in 5, above, as a consequence of the *bodily injury* to that *employee*;

7.   Arising out of the actual, alleged, or threatened discharge, release or escape of *pollutants*.   This exclusion does not apply to: (i) Wildland Fire training or emergency operations; (ii) pesticide or herbicide spraying; (iii) use of chlorine or sodium hypochlorite in sewage or water treatment of swimming pool maintenance operations; and (iv) storage and application of road salt, sand, anti-skid and similar materials, provided all such activities meet federal, state, and local government statutes, ordinances, regulations and license requirements.

8

7/01/2022

8. For liability, including all loss, cost or expense, directly or indirectly arising out of, resulting a consequence of, or related to:

   a. Asbestos;
   b. Silica;
   c. Mold;
   d. Fungus; and/or
   e. Lead

   whether or not there is another cause of loss which may have contributed concurrently or in sequence to a loss.

9. Resulting from or contributed to in any manner by the hazardous properties of *nuclear material*;

10. For injuries resulting from or contributed to in any manner by the presence of asbestos;

11. Arising from or contributed to in any manner by acts, errors or omissions in the engineering or design of any public roadway or public transportation project;

12. For back pay and benefits and any costs relating to reinstatement of an *employee*, for improper payroll deductions, unpaid wages, or misclassification or exempt or non-exempt employee status;

13. For *employee* grievances and any claims over which the South Dakota Civil Service Commission or the South Dakota Bureau of Human Resources have jurisdiction including claims concerning the South Dakota Retirement System;

14. For fines, penalties, punitive or exemplary damages, or liquidated damages;

15. For failure to perform, or breach of, a contractual obligation;

16. For damages that are a result of a discretionary act or task. This exclusion does not apply if the damages are the result of a *ministerial act or task*;

17. To the extent the *occurrence* is covered by any valid and collectible liability insurance, except this exclusion shall not apply to liability insurance of the *employee* that protects the *employee* while driving a *State*-owned, *State*-leased, or *employee*-owned or leased vehicle in the conduct of *State* business, but the personal vehicle insurance shall provide primary coverage for the *occurrence* in the event the *employee* drives a vehicle not owned or leased by the *State* in the conduct of *State* business;

9

18. For damages measured by contract, as set forth in SDCL ch. 21-2;

19. For damage to property owned by the *State*;

20. Arising out of the ownership, operation, engineering or design of any airport, landing strip or similar facility.  However, this exclusion shall not apply to state-owned hangars in the cities of Brookings, Vermillion, and Pierre, South Dakota;

21. For refund of taxes, fees and assessments;

22. Arising out of the *employee* obtaining remuneration or financial gain to which the *employee* was not legally entitled;

23. Arising from collecting or attempting to collect taxes;

24. Arising from providing or attempting to provide emergency disaster relief services pursuant to SDCL ch. 34-48A;

25. Arising from, or contributed to in any manner by or through, acts, errors or omissions, activities or facilities of the (a) South Dakota Building Authority, its Board of Directors, or its employees; (b) South Dakota Health and Educational Facilities Authority, its Board of Directors, or its employees; (c) South Dakota Science and Technology Authority, its Board of Directors, or its employees; (d) South Dakota Educational Enhancement Facilities Corporation, its Board of Directors, or its employees; (e) South Dakota Ellsworth Development Authority, its Board of Directors, or its employees; and (f) South Dakota Housing Development Authority, its Board of Directors, or its employees;

26. Arising out of the employee's willful and wanton misconduct or the commission of a criminal or knowingly wrongful act by the *employee*;

27. Arising in any manner from activities of South Dakota State University 4-H volunteers. No South Dakota 4-H volunteer is considered an *employee* under this Memorandum; or

28. To the extent the *occurrence* is covered by any valid and collectible cyber liability or media and information security protection insurance purchased by the *State*.

29. For *bodily injury* or property damage caused by, resulting from, or arising out of the actual or alleged transmission of a virus, bacterium, microorganism, or any communicable disease that induces or is capable of inducing physical distress, illness or disease, even if the claims against any

7/01/2022

*employee* or the *State* itself allege negligence or other wrongdoing in the supervising, hiring, employing, training or monitoring of others who may be infected with and spread a communicable disease, testing for a communicable disease, failure to prevent the spread of a disease, or failure to report a disease to authorities.

## II. COVERAGE AMOUNT

The Coverage Amount shown in the Declarations is the most *PEPL* will pay for damages for each occurrence, regardless of the number of:

A. *Employees* involved;

B. Claims made or suits brought for damages; or

C. Persons or organizations who sustain damages.

The Coverage Amount shown in the Declarations shall be reduced by any insurance that applies to an *occurrence* not excluded hereunder, and the coverage afforded by this Memorandum shall be excess of and not contribute with any such insurance. Notwithstanding the preceding sentence, this Memorandum shall be primary with respect to liability insurance of the *employee* that protects the *employee* while driving a *State* owned or leased vehicle in the conduct of state business.

An *occurrence* taking place over more than one Coverage Period shall be deemed to have taken place during the Coverage Period in which the *occurrence* first took place, and only that Coverage Period's Coverage Amount applies.

## III. DEFINITIONS

1. *Aircraft* – any machine designed to travel through the air, including but not limited to airplanes, dirigibles, hot air balloons, helicopters, hang gliders, and drones.

2. *Bodily injury* – injury, sickness or disease sustained by a person, including death resulting therefrom.

3. *Defense costs* – fees and expenses generated by and related to the adjustment, investigation, defense or litigation of a claim, including attorney's fees, court costs, and interest on judgments before they are paid. *Defense costs* shall not include the salaries and overhead of employees of the *State*, except as may be provided for under contract with the Attorney General.

4. *Employee* – all current and former employees and elected and appointed officials of the *State* whether classified, unclassified, licensed or certified,

11

7/01/2022

permanent or temporary, whether compensated or not, conducting State business. The term includes employees of all branches of government including the judicial and legislative branches and employees of constitutional, statutory and executive order boards, commissions, and offices. The term does not include independent contractors.

5.   *Employment Practices Claims*:

    a.   A written demand for damages or other relief;

    b.   A civil proceeding in a court of law or equity or an alternative dispute resolution process seeking monetary or non-monetary relief; or

    c.   An administrative or regulatory proceeding including an investigation by a regulatory or administrative agency, such as the Equal Employment Opportunity Commission or its state or local equivalent, against any *employee* or state agency, board, commission, or educational or medical institution and any appeal from such claim.

6.   *Ministerial act or task* – an act or task that involves obedience to instructions, but demands no special discretion, judgment or skill.

7.   *Nuclear material* – Source material, special nuclear material or byproduct material, all as defined in the Atomic Energy Act of 1954 or any law amendatory thereto.

8.   *Occurrence* - an accident, act, error, omission or event, during the Coverage Period, which results in damages and arises within the scope of the *employee's* duties for the *State*. An injury arising out of continuous or repeated exposure to substantially the same general conditions is considered as arising out of one occurrence and will constitute only one occurrence for coverage purposes.

9.   *PEPL* - the Public Entity Pool for Liability established by SDCL ch. 3-22.

10.   *Pollutants* - any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

11.   *State* - the State of South Dakota.

7/01/2022

THE PUBLIC ENTITY POOL FOR LIABILITY
MEMORANDUM OF LIABILITY COVERAGE
TO THE EMPLOYEES OF SOUTH DAKOTA

### Endorsement No. 1

**Privately-Owned Vehicles Operated by Employees of the State of South Dakota while on Official Duty During Periods of State Disaster Declarations by the Governor**

Effective Date of Endorsement:  July 1, 2022

Issue Date of Endorsement: July 1, 2022

Section IV, Special Coverage Extension, is amended as follows:

> With respect to employees of the State of South Dakota who must use their privately-owned vehicles to travel on official business to conduct disaster relief-related work during periods of time when there has been a State Disaster Declaration by the Governor, coverage is provided by this Memorandum and shall be a combined single limit of liability of $1,000,000 to include coverage for bodily injury and property damage. This shall include damage to the employee's vehicle (collision and comprehensive coverage) when in use under the conditions set forth in this endorsement.

> This extension shall only apply to employees of the State of South Dakota if all of the following conditions have been met:

> 1. The employee must drive to a workstation that is located in a city, town or rural location that is not their normal place of work.

> 2. The director of Fleet and Travel or the director's designated agent has certified that a state-owned fleet vehicle is not available during the period of time of required use.

> 3. The employee is on official business conducting work associated with a State Disaster Declaration by the Governor.

THE PUBLIC ENTITY POOL FOR LIABILITY

By: _____
Craig Ambach, Director

THE STATE OF SOUTH DAKOTA

By: _____
Scott W. Bollinger, Commissioner
Bureau of Administration

13                                          7/01/2022