UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY J. DONOHUE, | ) | Case No. 4:22-CV-4044-LLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | PLAINTIFF'S REPLY BRIEF |
| v. | ) | IN SUPPORT OF HIS MOTION |
| | ) | FOR PARTIAL SUMMARY |
| ARTHUR J. GALLAGHER & CO., a | ) | JUDGMENT AND IN |
| Delaware corporation; and BOB | ) | OPPOSITION TO |
| JACOBSEN, | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| Defendants. | ) | |

We now know as an undisputed fact that Tim was terminated by Defendants because of his Senate Committee testimony, particularly since Bob Jacobsen does not deny telling Tim that reason in their phone conversation. See Declaration of Bob Jacobsen, ¶ 14. This puts the Court in solid position to determine the legal issues presented by Plaintiff's Motion for Partial Summary Judgment, to grant Plaintiff's Motion, and to deny Defendants' Motion for Summary Judgment.

**1.   The right of petition is a matter of South Dakota public policy forming the basis for exception to the at-will doctrine in private employment.**

Defendants cite cases from other jurisdictions to the effect that only public employees can use the First Amendment as a public policy exception to the at-will employment doctrine. While our South Dakota Supreme Court has held that for purposes

1

of the public policy exception there is no distinction between public and private employment (*Hallberg v. South Dakota Board of Regents,* 937 N.W.2d 568, 577, 219 SD 67, ¶ 27), our Supreme Court has not yet been presented with a case calling for adoption of the First Amendment as an additional subject of the public policy exception.[1] Accordingly, this Court must make the "*Erie* educated guess" as to whether the Supreme Court would do so for private employment, if presented. *Blankenship v. USA Truck, Inc.,* 601 F.3d 852 (8th Cir. 2010). Fortunately, no guess is really needed.

The applicable portion of the First Amendment is "the right of the people . . . to petition the Government for a redress of grievances." The same principle is carried forward in Article 6, § 3 of the South Dakota Constitution providing:

> The right of petition and of the people peaceably to assemble to consult for the common good and make known their opinions, shall never be abridged.

South Dakota has gone even further and protected this right by statute.[2] SDCL 22-11-19 states in relevant part as follows:

> Any person who injures, or threatens to injure, any person or property in *retaliation* for that person *testifying in an official proceeding*, or for cooperating with . . . government officials . . . is guilty of tampering with a witness. Tampering with a witness is a Class 4 felony. (emphasis supplied)

---

[1] This Court has already determined that the first Amendment applies under South Dakota law as a fourth public policy exception, though in the public employment context. *Emery v. Schneider,* 2009 WL 236686, p.7 *10 (D.S.D. 2009).

[2] At least two cases from other jurisdictions recognize such statutes as adequate basis for the public policy exception. *Carl v. Children's Hosp.,* 702 A.2d 159 (1997); *Bishop v. Federal Intermediate Credit Bank of Wichita,* 908 F.2d 658, 662 (10th Cir. 1990).

Obviously, only the State can bring a criminal charge. Yet, our statutes make perfectly clear that a criminal charge is not the exclusive remedy for violation of a criminal statute. SDCL 22-2-1 states plainly:

> The omission to specify or affirm in this title any liability to any damages, penalty, forfeiture or other remedy imposed by law and allowed to be recovered or enforced in any civil action or proceeding for any act or omission declared punishable in this title does not affect any right to recover or enforce the same.

And if that were not definite and explicit enough, SDCL 23A-28-9 states:

> Proceedings under this chapter [i.e. criminal proceedings] do not limit or impair the rights of victims to sue and recover damages from the defendant in a civil action.

And of course, SDCL 20-9-1 expresses and creates the *prima facie* tort as follows:

> Every person is responsible for injury to the person, property, or rights of another caused by his willful acts . . . .

So it is beyond dispute that the right to petition the government, as Plaintiff did, is not only protected constitutionally, it is protected statutorily by forbidding injury to the exercise of such right and by providing victims with a private civil right of action. What more could South Dakota do to make plainly evident that Tim's testimony before the Senate Committee is a fundamental protected right inherent in South Dakota's public policy? So no "guess" is needed. In fact, it would take a "blind eye" not to recognize Tim's right as protected by South Dakota's public policy and therefore recognizable as an exception to the at-will employment doctrine.

### 2. Defendants cannot avoid the public policy exception.

Defendants seem to contend that they, and not the law, control Tim's right of petition since their written employment policy asserts control over when, how and why the constitutional and statutory rights can be exercised (wrongly called "lobbying"). See Declaration of Bob Jacobsen, ¶ 13.[3] And, apparently, they reserve the right to injure Tim when they feel like it. Obviously, this would reduce the petition right to a level of meaninglessness. Take the whistleblower exception, for instance. Could it be seriously contended that an employer can avoid the exception by an employee handbook provision stating that the employee must have the employer's permission before whistleblowing?

As another example, SDCL 12-3-5 requires employers to permit employees to take time from work to vote. It makes violation a Class 2 misdemeanor. So, could an employer validly require an employee to first obtain the employer's consent to the employee's voting choices before allowing absence for that purpose? That question answers itself and clearly points to the inadequacy of Defendants' "insistence" on controlling Plaintiff's exercise of the petition right.

Additionally, Tim's testimony does not constitute lobbying. SDCL 2-12-1 provides as follows:

> Any person who employs any other person to act as a lobbyist to seek the introduction of legislation or to promote, oppose, or influence in any manner the passage by the Legislature of any legislation affecting the

---

[3] The AJG "manual" suggests that "You must discuss any such activities with the Compliance Department to determine whether disclosure or other rules apply." None are specified from that Department in the Jacobsen Affidavit or otherwise. Since Tim obviously was not a lobbyist, there were not any such rules, other than perhaps AJG's wrongful interference with such lawful and permitted exercise.

4

> special interests of any agency, individual, association, or business, as distinct from those of the whole people of the state, or to act in any manner as a lobbyist in connection with any such legislation, shall register the name of the person so employed or agreed to be employed, with the secretary of state, to be included in a directory of registered lobbyists as hereinafter provided. The lobbyist shall also register with the secretary of state. Upon the termination of such employment prior to the adjournment sine die of a legislative session, such fact shall be entered opposite the name of any person so employed, either by the employer or employee.

In other words, a lobbyist is a person who is employed by other special interest employers. In that circumstance Tim would have needed to register as a lobbyist. But Tim was not employed by anyone. Doing a favor for a friend or acting upon request of one or more legislators is certainly not lobbying. Accordingly, the supposed policy of Defendants has no applicability here.

### 3. The punished testimony is consistent with AJG's supposed "Way."

The materials submitted by Defendants reveal a tremendous inconsistency in perspective, two-faced actually. This becomes readily apparent when one asks just who is intended to be protected by the various public entity pools. The question answers itself. The pools exist to protect the public entities who are members of those pools. See, for instance, SDCL 1-24-12 (making clear the pools are for entity member benefit). It is they who are Gallagher clients with respect to whatever services Gallagher may provide. And then the next logical question is who was to be protected by SB 92? It was the pool members, of course.

Bob Jacobsen's Affidavit attaches AJG's Global Standards of Business Conduct as Exhibit B. AJB 000034 is a page entitled Shared Values. One of those is as follows:

>**Client Excellence** – We measure our performance from our clients' perspective by appreciating, anticipating and ensuring their needs are met.

So Tim Donohue was fired for taking a tiny part in trying to accomplish the very objective that AJG purportedly espouses.

4. **The new relabelling of the termination basis cannot avoid the public policy exception.**

The Defendants' new first-time assertion that Tim's firing was for his procedural failure rather than his testimony cannot serve as a basis for the Defendants' summary judgment motion or to create an issue of fact that would defeat Plaintiff's Motion for Partial Summary Judgment.

More specifically, it is alleged that Tim should have first consulted AJG's Compliance Department and then stated that his testimony reflected his own views and not those of AJG.  In context, it is obvious that the Compliance Department provision was an alert to seek advice and not permission.  Since Tim was not engaged in lobbying at all, there was no reason to seek advice from the Compliance Department.  Furthermore, as described above, since there was no disclosure whatsoever of Tim's affiliation with anyone or any company, there was no reason to announce that his statements were his own views and not that of some undisclosed third party.

Most importantly, however, this new reliance on supposed procedural issues is entirely contrary to what we know about what really happened.  In no produced written communication to anyone did Bob Jacobsen assert these procedural points as the basis for dismissal.  See Affidavit of Steven W. Sanford, Exhibit B.  In their phone conversation,

6

he told Tim that he was being fired for his testimony, not for his failure to check off procedural boxes.  Tim's Affidavit ¶ 5.  Furthermore, the termination memo sent to Tim states two supposed reasons that are puzzlingly way off the mark and seem to come from nowhere.  Even if they accurately describe the reasons--conduct inconsistent with preserving confidentiality and account relationships--they are contrary to the now-claimed procedural bases.  The Jacobsen Affidavit does <u>not</u> at all dispute Tim's Affidavit as to the stated reason for his termination.  In fact, the now-described reason [Jacobsen Affidavit ¶ 19] appears literally out of nowhere.  This "created" explanation is insufficient to constitute a <u>genuine</u> issue of material fact.  In reality, it is just a different label for the same essential termination basis – Tim's protected testimony.

**5.     The Court should disregard AJG's claimed but undocumented relationships with insurance pools.**

As now obvious from the Jacobsen Affidavit, Defendants rely on AJG's claimed relationships with various insurance pools.  Yet Defendants have refused to provide documentary proof of the nature and scope of the claimed relationships.  See Affidavit of Steven W. Sanford, Exhibit A.  So Defendants are saying in effect "We claim these relationships, but we refuse to show you proof."

Arguably, the withheld documents should have been provided as part of Defendants' initial disclosures under FRCP 26(a) or at least supplemented under Rule 26(e).  As a consequence, FRCP 37(c)(1) prevents Defendants from using the claim of those relationships as evidence for these motions.  And it is hard to believe that such an

attempt to introduce evidence on a subject for which there has been such nondisclosure would survive an appropriate motion in limine. Accordingly, those portions of the Jacobsen Affidavit asserting a claimed relationship with South Dakota insurance pools should be disregarded.

## Conclusion

For all the reasons above-stated, Plaintiff respectfully requests that its (1) Motion for Partial Summary Judgment be in all respects granted and (2) Defendants' Motion for Summary Judgment be in all respects denied.

Dated: August 5, 2022

                                     CADWELL SANFORD DEIBERT
                                     & GARRY LLP

By _/s/ *SW Sanford*_____
                                     Steven W. Sanford
                                     200 E. 10th Street, Suite 200
                                     Sioux Falls, South Dakota 57104
                                     (605) 336-0828
                                     E-mail: *ssanford@cadlaw.com*
                                     ***Attorneys for Plaintiff***