UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY J. DONOHUE, | ) | Case No. 4:22-CV-4044-LLP |
| Plaintiff, | ) | |
| v. | ) | SUPPLEMENTAL AFFIDAVIT OF TIMOTHY J. DONOHUE |
| ARTHUR J. GALLAGHER & CO., a Delaware corporation; and BOB JACOBSEN, | ) | |
| Defendants. | ) | |

STATE OF SOUTH DAKOTA  )
                       : SS
COUNTY OF MINNEHAHA    )

Timothy J. Donohue, being first duly sworn on oath, deposes and states as follows:

1. This Affidavit is provided in response to the Declaration of Hal Shillingstad in opposition to Plaintiff's Motion for Partial Summary Judgment dated July 28, 2022.

2. Jason Pieper of Watertown, South Dakota is a close friend. We regularly play golf together.

3. On a golf trip to Arizona with Jason in the first quarter of 2021, he explained the horrific trouble Jason's wife was having with her worker's compensation claim after she was injured in a classroom while teaching in the Watertown School District. By coincidence, at the Las Sendas Golf Course we ran into Jeff Jares, owner of

1

Claims Associates, Inc., which provides claims administration services for the Associated School Boards Worker's Compensation Fund. I tried to talk to him privately about the claim, but he told me that there was nothing he could do.

4. Throughout the summer of 2021 and into the fall, Jason would discuss his wife's situation with me. Later in the fall, Jason advised that a bill would be introduced in the upcoming legislative session that would provide greater regulation and transparency for worker's compensation pools under the Associated School Boards and the South Dakota Public Assurance Alliance. I was already familiar with financial upheavals from back in 2016 as described in the news article attached hereto as Exhibit A. It seemed to me that the essential premise of the proposed legislation would actually benefit the public entity members of these pools.

5. At some later point I came to understand that Jason had met with legislators who were behind the bill and they expressed the need for someone to explain the historical background on pools and their relationship to the insurance industry. Jason asked me to fill that role. Sometime in January 2022 he requested that I come to Pierre for that purpose. It did not occur to me that I needed anyone's permission before doing this favor for my friend, Jason.

6. On Monday, January 24, 2022, I drove to Pierre. I left mid-afternoon and arrived early evening. I met Jason at the Red Rossa restaurant and we discussed the bill and the need for my historical background on pools. Later, Sue Peterson, a legislator from Sioux Falls, joined us. She is the first legislator I had met or talked to on the subject. My earlier impression had been that I would provide this information in a

conference-room-type setting. She explained that I would provide this information as formal testimony in a formal public hearing before a Senate Committee. This was the first time I understood this context and setting.

7. This new information made me rather nervous and I went back to my room to prepare notes for my supposed testimony. I was nervous because public speaking is not exactly a routine part of my work life or otherwise, other than to insured employee groups.

8. The next morning I arrived at the Committee hearing room early. I was the first one to sign-in. While waiting in the room seated in the guest area before the session started, I had informal conversation with a few legislators seated as Committee members, such as Lee Schoenbeck, but nothing of substance.

9. I was called out of the room and I met with Senator Tim Johns, a former judge and the prime sponsor of the bill. He briefly explained the hearing procedure to me. We then went into the hearing room and eventually I gave my testimony as set forth in the audio recording that has been filed with the Court. After the bill was voted down and the hearing ended, our group was approached by Wayne Steinhauer, a Senator from the Sioux Falls area, who I knew from prior contacts. He provided Sue Peterson and others with advice about the bill and various practicalities.

10. Afterwards, Jason and I went back to Red Rossa, had lunch and then I returned to Sioux Falls.

11. Except as described above, I did not ever speak to or communicate in any way with any legislator about SB 92 and at no point was my employment with AJG identified, mentioned or discussed. It never occurred to me to identify AJG as my employer and then to state that the views expressed were my own and not those of AJG. Since I made no such identification, it did not occur to me that anyone would think my expressed views were anything but my own.

12. Before Gallagher acquired Williams Insurance in 2018, I was an insurance producer with Williams for decades. Going back many, many years, Williams had brokered property insurance for the State of South Dakota. I also understood that Williams – and later AJG – arranged for a $500,000 policy for the PEPL Fund. It was and still is my understanding that the PEPL Fund provides liability coverage for State employees. I also participated in discussing aviation insurance for the State while an AJG employee, but that had nothing to do with pools.

13. At the time of my testimony, I was unaware of any relationship between AJG and either of the pool funds affected by SB 92 or any relationship with ASBSD or South Dakota Public Assurance Alliance, or any relationship the PEPL Fund may have with those pools. I still am not.

14. I have reviewed Exhibit B to the Declaration of Bob Jacobsen dated July 26, 2022, particularly the first page, which purports to contain my signature dated

4

February 20, 2018 to AJG's Global Standards of Business Conduct. I don't remember signing such a document and obviously the page does not contain my signature.

Dated: August 11, 2022

_____
Timothy J. Donohue

Subscribed and sworn to before
me this 11 day of August, 2022

_____
Notary Public – South Dakota
My commission expires: 4/21/28

STEVEN W. SANFORD
NOTARY PUBLIC
SOUTH DAKOTA
SEAL

5