## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| Timothy J. Donohue, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  4:22-CV-04044-KES |
| | ) | |
| vs. | ) | **DEFENDANTS' REPLY** |
| | ) | **MEMORANDUM OF LAW IN** |
| Arthur J. Gallagher & Co., a Delaware | ) | **SUPPORT OF MOTION FOR** |
| Corporation; and Bob Jacobsen | ) | **PARTIAL SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

Donohue's termination from AJG was lawful and not in retaliation for violation of a recognized public policy in the State of South Dakota.  Instead, he was an at-will employee who could be fired for no reason or any reason.  Here, Donohue was fired for violating company policy by testifying on behalf of proponents of a bill without notifying the company in advance, all of which resulted in an existing customer of AJG asking on behalf of an angry set of clients why its agent was testifying contrary to their interests.  The reasons behind Donohue's termination, however, are not material facts on AJG's motion for summary judgment seeking dismissal of Plaintiff's retaliatory discharge claim purportedly based on a public policy exception. Instead, the threshold issue AJG is asking this Court to resolve is a legal one.  Specifically, is there a public policy exception recognized under South Dakota law that protects Donohue from termination as an at-will employee under the facts of this case?  The answer is an emphatic "no".  The briefing on

this motion underscores how Donohue is a litigant still in search of a legal theory.  What began as a misguided retaliatory discharge claim based on Donohue's First Amendment free speech rights under the U.S and South Dakota Constitutions that was abandoned during briefing has now morphed into a bizarre claim based on the South Dakota criminal obstruction of justice statute and specifically witness tampering.  There are no cases acknowledging this as a basis for the public policy exception to the at-will employment doctrine and, more importantly, there are absolutely no facts in the case that AJG committed criminal witness tampering under South Dakota law. This is particularly true since it is undisputed that AJG had no idea Donohue was going to testify at a South Dakota Senate hearing before it happened.

Even if AJG terminated Donohue for his testimony (it did not), there is no South Dakota law that establishes a public policy to prohibit the termination. If the Court holds otherwise, the effect is that Donohue could voluntarily choose to testify against AJG's business interests without any guardrails, even when (like here) Donohue has no obligation to get involved in the legislative debate over insurance legislation.  No legislature or court has articulated a public policy that allows an employee to *voluntarily* appear before a legislature in support of legislation and, by doing so, gain immunity from all downwind consequences to his employer. This Court should not be the first.  Donohue's continuing search for legal basis for his retaliatory discharge claim should end with dismissal by the Court through the grant of Defendants' motion.

## ARGUMENT

**I.     South Dakota's witness tampering criminal statute cannot support Donohue's proposed public policy exception.**

Realizing that his First Amendment free speech theory advancing a retaliatory discharge claim fails, Donohue raises for the first time in his opposition to this motion, a South Dakota criminal statute prohibiting witness tampering as providing a public policy exception to his termination as an at-will employee. [1] He now claims the witness tampering statute creates a right to petition the government. He then claims that there is "a private civil right of action" to enforce the right. (Plaintiff's Reply Brief in Support of His Motion for Partial Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment at 2-3.)  Donohue's last desperate attempt to find a public policy exception to support his wrongful termination claim fails.

To prevail using a public policy exception ("PPE"), a plaintiff must establish that the "employer's motivation for termination contravenes a clear mandate of public policy." *Niesent v. Homestake Min. Co.*, 505 N.W.2d 781, 783 (S.D. 1993). There are—as noted in AJG's initial Memorandum—three broadly-accepted PPEs under South Dakota law (refusal to commit an illegal act, workers compensation retaliation, and whistleblowing)

---

[1] Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment (Doc. No. 27) unequivocally disposed of Donohue's original basis for his retaliatory discharge claim based on free speech protections under the U.S and South Dakota Constitutions. Such claims require state action and involve governmental agencies as explained in the nationwide case law. (*See id.* at 12-15.) This theory has found no basis in the private employer context.  Thus, Donohue is pushing an entirely new theory unsupported by South Dakota case law.

and arguably a fourth that does not apply here.[2] (*See* Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment (Doc. No. 27) at 6-7.)

Donohue now presents a fifth possibility. He cites the South Dakota criminal witness tampering statute that provides:

> Any person who injures, or threatens to injure, any person or property, or, with intent to influence a witness, offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding to induce the witness to:
>
> (1) Testify falsely;
> (2) Withhold any testimony, information, document, or thing;
> (3) Elude legal process summoning the witness to testify or supply evidence; or
> (4) Absent himself or herself from an official proceeding to which the witness has been legally summoned;
>
> is guilty of tampering with a witness.

SDCL § 22-11-19.

The undisputed facts surrounding Donohue's testimony show that the witness tampering statute cannot create a PPE that would be applicable to Donohue. The witness tampering statute is designed to "criminalize acts that threaten the veracity and cooperation of witnesses." *State v. Peck*, 459 N.W.2d 441, 443 (S.D. 1990). The *Peck* court, in

---

[2] It is unclear whether Donohue contests that a PPE based on a constitutional protection against government cannot apply to a private sector employer. Donohue's Opposition Brief (Doc. No. 30) cites the First Amendment and its South Dakota corollary for the right to petition the government, but appears to focus on the witness tampering law for his suggested PPE. AJG reiterates the arguments and case law in its opening brief that the First Amendment and South Dakota Constitution provisions that protect freedom of speech and freedom to petition cannot support a PPE as applied to a **private sector** employer. (Doc. No. 27 at 12-15.)

4

analyzing the witness tampering statute also held that "[w]hat is significant under the tampering statute is the status of the person being influenced either as a 'witness' or 'prospective witness.'  Such status is dependent upon whether the defendant knows or should expect to know that the witness will be called to testify."  *Id*.  The focus of the anti-tampering statutes is on the actions and intent of the person trying to influence the witness.  *State v. Adamson*, 738 N.W.2d 919, 926 (S.D. 2007).

Here, AJG did not know about Donohue's testimony until *after* he had already testified. AJG could not have injured, or threatened to injure, Donohue to induce him to testify "falsely" or "absent himself" from the Legislature's hearing when it had no knowledge of Donohue's planned testimony before it occurred.  There is also no dispute that Donohue was never "legally summoned" or compelled to appear before the legislature.[3]  While Donohue does not necessarily have to prove elements of a statute, he does need to establish that the statute that he puts forward creates a "clear mandate of public policy" relevant to the facts he has alleged.  At most, the witness tampering statute establishes the public policy of not trying to prevent a subpoenaed witness from testifying truthfully or testifying at all.  It has nothing to say about what is appropriate or

---

[3] Donohue has not presented any evidence or claimed that his testimony was pursuant to a summons, or in any way compelled and in fact has submitted an affidavit on the cross motions that shows his testimony was completely voluntary. (*See* Supplemental Affidavit of Timothy J. Donohue (Doc. No. 34) at ¶¶ 5-10.) Further, while AJG concedes that truthful testimony is important to the South Dakota Legislature's functioning, Donohue has not shown that the statute would even apply to legislative committee hearings where, at least in Donohue's case, he was not sworn in as a witness. (*See* Exhibit A to Affidavit of Steven W. Sanford (Doc. No. 21-1) at 31:14 (audio recording of Donohue's appearance).)

inappropriate if an employee chooses to go to the legislature on his own accord to lobby in support of a bill that may impact his employer's clients, and in violation of company policies, without notifying his employer before doing so.[4]

Donohue cites no cases in support of his new theory that a witness tampering statute could be the source of a PPE in South Dakota where an employee goes before a legislature, voluntarily, to support legislation. However, Donohue cites *Carl v. Children's Hosp*., 702 A. 2d 159 (D.C. Ct. App. 1997), which involved a District of Columbia local law that made it illegal to injure "any party or witness in his person or property on account of his attending or having attended such proceeding, inquiry, or investigation, or on account of his testifying or having testified to any matter pending [before the D.C. Council]."[5] 702 A.2d at 160. The D.C. Court of Appeals found that the trial court committed error in dismissing the case on a motion to dismiss where it held that only one public policy could be invoked in a wrongful discharge case by an at-will employee. *Id.* at 161-62.

*Carl* does not support Donohue's PPE for two reasons. First, no majority of the *Carl* District of Columbia *en banc* appellate court specifically embraced a public policy of being

---

[4] Donohue claims that his testimony does not constitute "lobbying" under South Dakota law. South Dakota's definition of lobbying under the registered lobbyist statute is not relevant to this case. Donohue testified in favor of insurance legislation, while working in the insurance industry and, as the recording he attached to his Motion shows, Donohue cited his experience in the industry to influence legislators to support Senate Bill 92. AJG submits that characterizing Donohue's actions as "lobbying" is reasonable despite Donohue's protests. Donohue's citation to SDCL § 2-12-1 has no bearing on whether a PPE applies.

[5] Ms. Carl testified before the D.C. Council and claimed she was terminated for doing so.

able to testify adversely to one's employer without any consequences. Rather, the concurrences agreed that public policy exceptions could continue to be found in statutes by the courts generally, rather than needing legislative pronouncements with itemized lists of actions that constitute wrongful discharge. *Carl* does not proclaim a statutory right (albeit with respect to a local law) to testify or petition.

Second, the statute in *Carl* specifically addresses retaliation against witnesses merely attending a D.C. Council meeting.  SDCL § 22-11-19, on the other hand, articulates a public policy prohibiting actions against persons committing acts to get witnesses to testify falsely, withhold testimony or information or elude service of process.  All of which are felony offenses under SDCL § 22-11-19.  There is no evidence whatsoever that AJG's conduct approaches the criminal culpability SDCL § 22-11-19 seeks to prevent.  It also does not prohibit an employer from taking employment action based on an employee's testimony that may be in violation of company policies and its business interests.

The South Dakota Supreme Court is unlikely to read into the limited application of the criminal witness tampering statute a public policy favoring private sector employees voluntarily appearing before legislative bodies to lobby for or against legislation without the employer's knowledge. If the South Dakota Legislature wanted this type of protection for lobbying and merely appearing before a legislative body, it could pass a statute addressing the rights and responsibilities of employees who engage in such advocacy.  But the criminal witness tampering statute is too far afield to suggest that either the South Dakota courts or the South Dakota Legislature have articulated a "clear mandate" of public policy for the restrictions Donohue wants.

The critical distinction between an "illegal act" PPE (valid) and a free speech/right to lobby PPE (not valid) is whether the appearance is voluntary or mandatory. Courts around the country recognize that, if an employee is subpoenaed or required to testify before a public body, it is appropriate to protect the employee from an employer's displeasure because there can be criminal liability for rejecting legal process. *See, e.g., Perkins v. Memorial Hospital of South Bend*, 141 N.E.2d 1231, 1237 (Ind. 2020) (termination for obeying subpoena of unemployment hearing officer protected by the public policy exception to the at-will employment doctrine); *Ressler v. Humane Soc. of Grand Forks*, 480 N.W.2d 429, 432 (N.D. 1992) (retaliatory discharge of an employee for honoring a subpoena and testifying truthfully would violate public policy in North Dakota); *Wiskotoni v. Michigan National Bank–West*, 716 F.2d 378, 383 (6th Cir.1983) (termination for obeying grand jury subpoena a violation of public policy under Michigan law); *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 (S.C. 1985) (termination for obeying subpoena a violation of public policy since failure to obey the subpoena would subject the employee to a criminal penalty). At least one court, though, reasoned that if an employee is not required by law to testify, the employee must decide for himself whether to get involved and live with the consequences. *See, Heidorn v. Church*, 2016 WL 4651382 at *3 (Penn. Sup. Ct. June 22, 2016) ("After review, we conclude that there was no statute or constitutional provision compelling Appellant to provide testimony. If the Church did terminate Appellant's employment because it did not agree with her testimony, public policy was not violated").

In summary, there is no clear mandate for a PPE for lobbying before the legislature evidenced by the witness tampering statute.  Donohue's claimed PPE lacks a constitutional, statutory, or judicial basis in South Dakota and should be rejected.

## II.   AJG agrees with Donohue that PPEs exist for violations of law, but none are relevant here.

Donohue highlights various laws that protect employees in the workplace and claims that an employer's policies cannot prevent an employee from exercising those rights. It is true that employees may engage in whistleblowing activity "which serves a public purpose" and be protected from termination on that basis. *See, Dahl v. Combined Ins. Co.*, 621 N.W.2d 163, 167 (S.D. 2001). It is also true that an employer may not punish an employee for "absent[ing] himself" from work for two hours to go vote. SDCL §12-3-5. Whistleblowing was recognized as a valid PPE in *Dahl* (provided the facts support the PPE) and the South Dakota Supreme Court would surely find a PPE for termination in violation of the voting protection statute if given the opportunity.

Donohue has the burden to establish that the "employer's motivation for termination contravenes a clear mandate of public policy." *Niesent v. Homestake Min. Co*., 505 N.W.2d 781, 783 (S.D. 1993). If Donohue is correct, he must show he was terminated for voluntarily testifying at the South Dakota Legislature. To establish a PPE, Donohue needs to present a constitutional provision, statute, or judicial decision in South Dakota that clearly mandates that employees are immune from any consequences from their employer for voluntarily speaking at the legislature.

9

Donohue cannot cite any constitutional provision, statute, or judicial decision that shows such a clear mandate.  The First Amendment and the South Dakota Constitution cannot be the source, since free speech constitutional protections only restrain the government. As noted above, the statute he cites for witness tampering has nothing to say about what an employer may or may not do when an employee voluntarily speaks on a topic at the legislature. And the courts in South Dakota have not found any mandates on such activity.

Along with the absence of cases or statutes that support it, there is a common-sense, practical reason for rejecting the PPE that Donohue puts forward. If Donohue is correct about his proposed PPE, then employees in South Dakota will suddenly have a protected right to appear before public bodies and speak on issues against their employer's or their employer's customer's interests, with full knowledge that their employer is powerless to stop their conduct.[6] The employee may have secret information about their employer's operations and strategy, and could freely speak on that secret information without fear of reprisal. As the law stands now, the employee's actions are tempered by the reality that the employer may end the relationship if the employee's actions no longer serve the business'

_____

[6] Donohue's proposal would far exceed the existing protection under federal law given to employees who speak publicly on the **terms and conditions of employment**, which is protected by the National Labor Relations Act but not applicable here. *See, e.g., St. Lukes Episcopal-Presbyterian Hospitals, Inc. v. N.L.R.B.*, 268 F.3d 575, 580 (8th Cir. 2001) (public statements related to an ongoing labor dispute concerning the terms and conditions of employment are protected under Section 8 of the NLRA, unless employee falsely and public disparages employer).  Here Donohue spoke publicly about the commercial interest of companies and their clients/customers, not the terms and conditions of his employment.

10

interests. If Donohue is correct and this Court creates a new PPE, employees will have a common law right to appear before legislative bodies and speak against their employer's interests shielded from all consequences of their actions. Even a dissenting judge who wanted to expand a free speech PPE agreed that the rule should only apply when "the employee's speech does not impact the employer's business." *Edmondson v. Shearer Lumber Products*, 75 P.3d 733, 742-43 (Mont. 2003) (Kidwell, J., dissenting). When the content of the speech implicates the employer's business, the stakes are high. If Donohue has his PPE, the at-will doctrine would be, as a practical matter, dead and meaningless. The Court should reject Donohue's new proposed PPE against private employers that he bases on both free speech and witness tampering grounds and grant AJG's motion to maintain the careful balance between respect for employee rights and the statutory at-will rule in South Dakota.

## CONCLUSION

For the reasons stated above, Donohue's wrongful discharge claim must fail as a matter of law. Accordingly, Defendants ask the Court to grant their Motion for Partial Summary Judgment.

Dated:  August 19, 2022

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P. C.


*/s/ Hal A. Shillingstad*
Hal A. Shillingstad, SD #4591
Nathan T. Boone (admitted *pro hac vice*)
Capella Tower
225 South Sixth Street, Suite 1800
Minneapolis, MN  55402
Telephone:  612.339.1818
Facsimile:  612.339.0061
hal.shillingstad@olgetree.com
nathan.boone@ogletree.com

**Attorneys for Defendants Arthur J.
Gallagher & Co. and Bob Jacobsen**

52558643.v4-OGLETREE