UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY J. DONOHUE,<br><br>　　　　Plaintiff/Counter Defendant,<br><br>vs.<br><br>ARTHUR J. GALLAGHER & CO., a Delaware Corporation, and BOB JACOBSEN,<br><br>　　　　Defendants/Counter-claimants. | **4:22-CV-04044-KES**<br><br>**ORDER DENYING SUMMARY JUDGMENT** |

Plaintiff, Timothy J. Donohue, filed a complaint requesting three forms of relief: damages for retaliatory discharge, declaratory relief declaring that the covenants of his employment contract are unenforceable, and injunctive relief prohibiting the enforcement of those covenants. Docket 1-1 at 5-9. Donohue then moved for partial summary judgment, asking the court to find in his favor on Count 1 for retaliatory discharge. Docket 18. Defendants, Arthur J. Gallagher & Co. and Bob Jacobsen, oppose the motion and move for partial summary judgment on the same count in their favor. Dockets 23, 25.

## BACKGROUND

### I. Factual Background

Arthur J. Gallagher & Co. (AJG) is a Delaware corporation with its principal office in Illinois. Docket 8 ¶ 2. AJG operates in the insurance and

benefits brokerage business and has maintained an office in Sioux Falls, South Dakota. *Id.* From February 5, 2018 to February 2, 2022, Donohue was employed by AJG. Docket 19 ¶ 1; Docket 26 ¶ 1. Donohue's employment was originally under an employment agreement, but that agreement lapsed at some point. Docket 19 ¶ 2; Docket 26 ¶ 2; *see also* Docket 22 at 6-7. On February 2, 2022, Donohue was an at-will employee. Docket 26 ¶ 1; Docket 22 at 6-7 (applying at-will legal framework).

In January 2022, Donohue was approached by several state legislators and a private individual about providing testimony at a legislative committee hearing concerning Senate Bill 92 (SB 92). Docket 19 ¶ 3; Docket 20 ¶ 2. *But see* Docket 26 ¶ 3. SB 92 was introduced with 14 legislators co-sponsoring the bill. Docket 21-3 at 5. The bill would "require that taxpayer funded pool arrangements providing workers' compensation coverage demonstrate financial stability, reliable management, and fair pricing." *Id.* at 2.

On January 25, 2022, Donohue appeared before the South Dakota State Senate Commerce and Energy Committee and gave oral testimony about the insurance industry and the history and purpose of the insurance pools that were the subject of the bill. Docket 19 ¶ 5; Docket 26 ¶ 5; *see* Docket 21-1 at 31:15-37:00. During his testimony, Donohue identified himself by name and gave his occupation as "insurance agent." *See* Docket 21-1 at 31:20-31:27; Docket 20 ¶ 3. He did not mention AJG, nor did he specify that he was speaking on his own behalf. Docket 21-1 at 31:15-37:00.

On January 28, 2022, Craig Ambach, executive director for one of AJG's clients, emailed AJG personnel asking "[w]hy do you guys have a broker testifying on SB 92 for more oversight and regulations on self funded pools[.]" Docket 21-2 at 2; *see* Docket 29 ¶ 9. Jacobsen, AJG's area president for Iowa and South Dakota, was made aware of the inquiry and investigated Donohue's testimony. Docket 29 ¶¶ 1, 9-10. On February 2, 2022, Jacobsen spoke to Donohue by telephone and informed him that AJG was terminating his employment. Docket 19 ¶ 9; Docket 26 ¶ 9.

## II.   Procedural Background

Donohue filed his original complaint in the State of South Dakota Circuit Court. Docket 1-1 at 5. Defendants removed the action to this court. Docket 1. During discovery, Donohue filed a motion for partial summary judgment on Count 1 of the complaint, which alleges retaliatory discharge. Docket 18. Defendants oppose the motion and filed their own motion for partial summary judgment on the same count. Docket 23.

## DISCUSSION

## I.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."

3

*Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022) (alternation in original) (quoting *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995)). In reviewing the record, the court views the facts in the light most favorable to the non-moving party. *Lissick v. Andersen Corp.*, 996 F.3d 876, 882 (8th Cir. 2021). But "[t]he mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the factfinder could reasonably find for the [movant]." *Turner v. XTO Energy, Inc.*, 989 F.3d 625, 627 (8th Cir. 2021) (cleaned up) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## II.   Retaliatory Discharge

"As a federal court sitting in diversity jurisdiction, we apply the law that the forum state would apply." *Winthrop Res. Corp. v. Stanley Works*, 259 F.3d 901, 904 (8th Cir. 2001). " 'When there is no state supreme court case directly on point, our role is to predict how the state supreme court would rule if faced with the [same issue] before us.' " *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) (alteration in original) (quoting *Northland Cas. Co. v. Meeks*, 540 F.3d 869, 874 (8th Cir. 2008)).

South Dakota law follows the employment at-will doctrine. As defined by SDCL § 60-4-4, "[a]n employment having no specified term may be terminated at the will of either party[.]" *See Dahl v. Combined Ins. Co.*, 621 N.W.2d 163, 166 (S.D. 2001). In *Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225 (S.D. 1988), the South Dakota Supreme Court recognized an exemption to the at-will doctrine. The doctrine "must be tempered by the further principle that where the

4

employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge." *Id.* at 227 (citation omitted). An employee invoking the public policy exception bears the burden to "prov[e] that the dismissal violates a clear mandate of public policy." *Id.* If the employee meets this threshold, "the burden shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee." *Id.* The employee must then show "by a preponderance of the evidence that the discharge was for an impermissible reason." *Id.* at 227-28.

"Whether a termination violates a clear mandate of public policy is a question of law." *Emery v. Schneider*, No. CIV. 07-5038, 2009 WL 236686, at *9 (D.S.D. Jan. 30, 2009) (citing *Niesent v. Homestake Mining Co. of Cal.*, 505 N.W2d 781, 783 (S.D. 1993)). "[T]he primary sources for declarations of public policy in South Dakota are the constitution, statutes, and judicial decisions." *Johnson*, 433 N.W.2d at 227 (emphasis omitted) (citing *State ex rel Meierhenry v. Spiegel, Inc.*, 277 N.W. 298 (S.D. 1979)).

Under this framework, the South Dakota Supreme Court has recognized three public policy exceptions to the at-will employment doctrine. An employer may not terminate an employee in retaliation for: (1) an employee's refusal to commit a crime or other unlawful act; (2) an employee's filing of a worker's compensation claim; or (3) an employee's participation in whistleblowing. *See id.*; *Niesent*, 505 N.W2d at 784; *Dahl v. Combined Ins. Co.*, 621 N.W.2d 163, 167-68 (S.D. 2001). This court has also recognized a public policy exception for

5

an employee who petitioned the government for just compensation for property taken by the government. *Emery*, 2009 WL 236686, at *10.

### A.    Public Policy Exception

Donohue argues that he was terminated for testifying in support of SB 92 and that his termination violates public policy. Docket 22 at 4. He urges the court to recognize a new public policy exception to the at will employment doctrine for an employee's sworn testimony. *Id.* at 6-12. Defendants object and claim that Donohue was terminated because he violated company policy, not merely for the fact he testified. Docket 25 at 6-9. They further argue that, even if he was terminated for testifying, the court should not recognize a public policy exception for First Amendment activity. *Id.* at 13-24.

As this court has previously found, "[t]he South Dakota Constitution and state judicial decisions express a strong public policy in favor of safeguarding the rights to free speech and to petition the government for redress of grievances[.]" *Emery*, 2009 WL 236686, at *9. The South Dakota Constitution provides that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." S.D. Const. art. VI, § 5. As to the right of petition, the South Dakota Constitution states that "[t]he right of petition . . . shall never be abridged." S.D. Const. art. VI, § 4. The South Dakota Supreme Court has further noted that "[t]he right to petition the government for a redress of grievances is . . . constitutionally protected activity, and one of the most precious liberties 'safeguarded by the Bill of Rights.' "

6

*Hobart v. Ferebee*, 692 N.W.2d 509, 514 (S.D. 2004) (alteration in original) (quoting *Curry v. State*, 811 So.2d 736, 742 (Fla. Dist. Ct. App. 2002)).

The First Amendment of the United States Constitution similarly protects "the freedom of speech[]" and the right "to petition the government for a redress of grievances." When interpreting these related guarantees, the United States Supreme Court has articulated that "[t]he right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). Testimony before the legislature is of special concern because "[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change[.]" *McGain v. Daugherty*, 273 U.S. 135, 175 (1927).

South Dakota statutory law also expresses a strong public policy interest in protecting those who testify. For example, under SDCL § 22-11-19, "[a]ny person who injures, or threatens to injure, any person or property in retaliation for that person testifying in an official proceeding . . . is guilty of tampering with a witness." Violations of this law are punishable as a felony. *Id.*

Defendants argue that these examples are not adequate to demonstrate a strong public policy. *See* Docket 25 at 13-17. They categorize the potential exception as one for all First Amendment activity and cite to a series of decisions from other courts declining to find public policy exceptions for

7

various First Amendment claims. *See id.* at 20-24. Defendants further contend that any exception the court finds should apply only to public entities, because the First Amendment does not apply to private actors due to the state action doctrine. *Id.* at 17-19. These arguments are unpersuasive for several reasons.

First, the question at issue is not whether all First Amendment activity is protected from retaliation by a public policy exception, but only whether testifying in an official legislative proceeding is protected. As the South Dakota Supreme Court explained, "exceptions to [at-will employment] policy are to be narrowly construed." *Petersen v. Sioux Valley Hosp. Ass'n*, 486 N.W.2d 516, 520 (S.D. 1992). Under this narrow construction, the cases cited by defendants are not persuasive because they deal with factually distinguishable situations. *See, e.g., McVey v. AtlantiCare Med. Sys. Inc.*, 276 F.3d 677, 683 (N.J. Super. Ct. App. Div. 2022) (finding no public policy exception for firing based on social media posts).

Instead, the more appropriate point of reference is *Bishop v. Fed. Intermediate Credit Bank of Wichita*, 908 F.2d 658 (10th Cir. 1990). In *Bishop*, the Tenth Circuit found a public policy exception when the plaintiff alleged he had been fired for testifying "during a hearing conducted by Senator Boren and Representative Synar." *Id.* at 662. The *Bishop* court did not create a public policy exception for all First Amendment activity, but recognized that "truthful testimony at congressional hearings is an act consistent with a clear and compelling public policy that justifies a public policy exception to the at-will employment doctrine." *Id.* at 663 (internal quotation omitted).

8

Further, the state action doctrine does not prohibit the court from recognizing a public policy exception in this case. The state action doctrine holds that "the First Amendment prohibits *governmental* infringement on the right of free speech." *See Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) (emphasis added). Thus, only the federal government, and the states through the Fourteenth Amendment, can be liable for infringement of the First Amendment; private actors are not subject to its reach. *See id.* But the court in this case does not claim to apply the First Amendment to defendants. Rather, to the extent that the First Amendment is analyzed, it is only to interpret the tort of retaliatory discharge, which exists under South Dakota law as an independent cause of action. *See Bishop*, 908 F.2d at 662-63 (recognizing public policy exception to at-will employment doctrine for testimony, but dismissing First Amendment claims under state action doctrine). The South Dakota Supreme Court has not recognized a distinction between private and public employers in the context of a public policy exception, and so this court declines to do so in this case. *See Hallberg v. S.D. Bd. of Regents*, 937 N.W.2d 568, 577 (S.D. 2019) ("We see no meaningful difference between private sector and public sector employees for purposes of the intentional tort of retaliatory discharge.")

The court finds that South Dakota has articulated a substantial public policy in favor of protecting the right of individuals to testify in an official legislative proceeding. The recognition of a public policy exception to the at-will employment doctrine aligns with precedent from the Tenth Circuit that

9

recognizes public policy protections for an employee's testimony before a legislative body. *See Bishop*, 908 F.2d at 662. But, because exceptions to the at-will doctrine are to be narrowly construed, this decision should not be read as implicating all possible conduct covered by the First Amendment. *See Petersen*, 486 N.W.2d at 520.

### B. Dispute of Material Fact

In their cross motions for summary judgment, both parties assert that there is no dispute of material fact and that they are each entitled to judgment as a matter of law. *See* Docket 22 at 1, 12-13; Docket 27 at 16. After careful review of the record, the court finds that a genuine dispute of material fact exists in this case. The parties disagree over the reason for Donohue's termination, which is an essential element of Donohue's claim for retaliatory discharge. *See* Docket 20 ¶ 5; Docket 29 ¶ 19. Donohue claims he was terminated for testifying, while defendants argue that Donohue was discharged for failure to comply with company policy. *See* Docket 20 ¶ 5; Docket 29 ¶ 19. Each party has presented adequate evidence on the record that a reasonable jury could return a verdict in their favor. *See* Docket 20 ¶ 5; Docket 29 ¶ 19; Docket 21-1; Docket 21-2; Docket 21-2 at 2-5. Thus, the court declines to grant summary judgment for either party.

### CONCLUSION

Because a genuine dispute of material fact exists, it is

ORDERED that Donohue's motion for summary judgment (Docket 18) is denied.

It is FURTHER ORDERED that defendants' motion for summary judgment (Docket 23) is denied.

Dated March 30, 2023.

                                          BY THE COURT:

                                          */s/ Karen E. Schreier*
                                          KAREN E. SCHREIER
                                          UNITED STATES DISTRICT JUDGE